GHOLSON, J.
It is incumbent on those who insist upon the right to put particular questions to a witness, to establish that right beyond any reasonable doubt, for the very purpose stated by them. The Philadelphia & Trenton Railroad Co. v. Stimpson, 14 Peters, 448, 460; Bain v. W. & F. Junction R. Co., 3 H. L. Cas. 1-16.
When a question is asked which is objected to, and the objection sustained, in taking an exception, there should be a statement of what it was proposed to prove; which must appear to be something material, and the rejection of which as evidence would be prejudicial to the party excepting. Hollister v. Reznor, 9 Ohio St. Rep. 1. So, where it appears from the same, or even different bills of exceptions signed as the trial progresses, that evidence offered in one way is received in another, and that no injury or prejudice could have resulted, an exception can not be sustained. Greenleaf v. Birth, 5 Peters, 132, 135.
According to these rules, the first two exceptions, as strict technical exceptions, to be decided upon independent of the facts and circumstances of the case, must fail. It is true, we may infer from what preceded the question as to the character of the defendant, that it was expected to prove a good character in the particular referred to, or that the defendant was not quarrelsome, but peaceable in his disposition. This, we think, it was competent to prove, and had such proof been rejected, it would have been error. But, in fact, such proof was fully made. In addition to the clear testimony on the subject which preceded the question to which an objection was taken, we find the following in the record. Peter Gibson, to whom the defendant was known as an apprentice and journeyman, said: “ He is the most quiet, peaceable boy I' ever saw or had. That is his reputation; it was always good. None ever knew him to give an uncivil answer to any one in the shop, in the eight years he worked there, either to those above or below him. If I spoke roughly to him, it would bring tears to his eyes, but no retort. We had eight, nine or ten, and latterly about fifty hands. I never knew him to give an uncivil word to any of them. He was the pet *117 of the shop, from his uniform kindness of disposition.” There was other testimony of the same kind, one of his employers saying : “ I never knew a better boy.” To all this •there was no opposing evidence, no contradiction.
The court certainly did not, and we do not suppose intended to confine the witness to what people said of the defendant, and to exclude evidence of a negative description as to his character for peace and quietness. Such evidence is often of the strongest description, as where a character for truth is in issue, that among those acquainted with the party, it has never been questioned, and so, as to character for peace and quietness, that among those with whom the party associates, no instance has been known or heard of, in which he has been engaged in a quarrel.
When general character is spoken of as the limit to which the inquiry is to be extended, the expression is used rather to exclude particular transactions, than to require that the fact of the possession of a quality or trait had been the subject of comment or remark among those acquainted with the party. The very fact that no remark or comment had been made or heard, might authorize those acquainted with him, and who would be likely to make or hear such a remark or comment, to say that his character was good.
The evidence as to character must necessarily, to some extent, be governed by the particular quality or trait in question, and its affirmative or negative nature. Those acquainted with the party — with the ordinary course and conduct of his life, would know how far and to what extent he had exhibited or failed to exhibit the quality or trait. In many cases, the fact that others had observed and mentioned the existence or nonexistence of such quality or trait, might als’o appear, and would be evidence, and indeed the mly evidence by which some qualities, as for example, the want of veracity, can be proved, without resorting to particular transactions.
If the question, “ what the man is ? ” was intended to go further than such evidence of a negative description, and require from the witness his opinion formed from sources hot common to those acquainted with the party, and having no *118 reference to a general character as shown by his ordinary course and conduct, we do not think that the rule has ever been carried so far. In particular cases such opinions may have been received, but, we suppose, it was in favor of the prisoner, and without objection, and not as a right. Even in this view, we do not think the defendant has any reason to complain, for he had the benefit of the knowledge and opinion of those acquainted with him, as to his character for peace and quietness.
As to the rejection of the evidence, supposing it to have been properly offered, of the character of the deceased as a quarrelsome man, it is admitted that the general rule prohibits such testimony, and we can see nothing in the circumstances of this case which would make it an exception. It is not claimed, whatever may have been the character of deceased, that it was known to the defendant.
In the conduct of a trial, very many matters must rest in-the discretion of the court of original jurisdiction. If a matter complained of infringes upon no rule of law, and merely affects the mode or manner of arriving at a determination, and not the right or merits to be decided, it is generally considered a matter of practice within the discretion of the court, with which it would not be proper for a court of error-to interfere.. Upon a motion for a new trial, and upon a review of the action, upon that motion, of the court in which the case was tried, which we permit by bill of exceptions and a proceeding in error, the range of action in reference to such matters is undoubtedly enlarged. But in such a case, we suppose it must appear that there has been an abuse of discretion, resulting in injustice. A difference of opinion as to the proper course of proceeding, would not be sufficient; the appellate court must be able to say that the course pursued was not only improper, but that it operated unjustly and injuriously to the parties.
Now, the act of the'court in sending the statutes of the State to the jury on their request, with a reference to- those sections which he had probably just read to them, was prohibited by no rule of law regulating the trial of criminal *119 cases, and we are not able to say that it was improper, and we can not conceive how it could operate to the prejudice of the defendant.
Courts are properly cautious in granting new trials upon the ground of newly discovered evidence; they will not be granted where such evidence is merely cumulative, nor unless the effect of it will at least make it probable that the result on another trial will be different. In a case of violence like' the present, witnessed by a number of persons from different points of view, if every new version of the facts which might be brought forward, would authorize a new trial, it might be properly said that there would be no end of new trials. Den v. Wintermute, 1 Green. 177. Rules to determine what is to be regarded as cumulative evidence, are not, we think, quite so uncertain and indefinite as supposed by counsel; nor is the rule so strict and unbending as not to admit of exceptions which would meet such extreme cases as have been presented for our consideration. The rule has been thus stated: “ There are often various distinct and independent facts going to establish the same ground, on the same issue. Evidence is cumulative which merely multiplies witnesses to any one or more of these facts' before investigated, or only adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tend to prove the same proposition or ground of claim before insisted on, is not cumulative within the true meaning of the rule on this subject.” Waller v. Graves, 20 Conn. 305—311. The rule, it has been said, has an occasional exception, where, by admitting the evidence, “ what was before mysterious and doubtful, becomes plain and certain, so that if received the most obvious justice, and if rejected the most palpable injustice will be done.” 3 Graham & Waterman on New Trials, 1064; Barker v. French, 18 Vermont, 360.
We have carefully compared the affidavits showing the uewly discovered evidence, with the statement of the evidence given on the trial, and we think that it not only comes within the objection of being cumulative evidence, as being *120 evidence of the same general character with that given by a number of other witnesses, but that, in view of all the evi dence and of the position and situation of the different, per eons testifying, as to the opportunity of observing what occurred, it is not probable that on another trial the result would be different.
In view of the remark just made, it is scarcely necessary to add that we do not think we would be justified in interfering with the verdict upon the ground that it is against the •evidence. We think the facts clearly established, show a hasty and inexcusable use of a deadly weapon, resulting in the death of a fellow being; and the evidence relied on to show that there was provocation which would reduce the crime to manslaughter, and much less to make out a case of justifiable homicide, was not sufficient. There are circumstances in this case, and particularly the youth of the defendant and his previous .gentle and amiable deportment, which are calculated very strongly to enlist sympathy, and which, addressed to another authority, may at some time lead to a mitigation of his sentence. But, we think, our duty requires ■us to affirm the judgment.

Judgment affirmed.

Brinkerhoff, C.J., and Scott, Sutliff and Peck, JJ., concurred.